**Case No. 24-20174**

---

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

TISHA PALMS,

*Plaintiff-Appellant*

v.

TEXAS CHILDREN'S HOSPITAL, INCORPORATED,

*Defendant-Appellee*

---

Appeal from the U.S. District Court for the
Southern District of Texas, Houston Division, No. 4:22-CV-3992
The Honorable Kenneth M. Hoyt, U.S.D.J., presiding

---

**PETITION FOR REHEARING EN BANC**

---

Andrew L. Schlafly
Attorney at Law
939 Old Chester Rd.
Far Hills, New Jersey 07931
908-719-8608
908-934-9207 (fax)

Jared Woodfill
Woodfill Law Firm, P.C.
3 Riverway Suite 750
Houston, Texas 77056
713-751-3080
713-751-3058 (fax)

*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF INTERESTED PARTIES

The case number here is No. 24-20174, *Palms v. Texas Children's Hospital*.

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an

interest in the outcome of this case. These representations are made in order that

the judges of this court may evaluate possible disqualification or recusal.

Plaintiff-Appellant: Tisha Palms

Appellate Counsel for Plaintiff-Appellant:

Andrew L. Schlafly                    Jared Woodfill
Attorney at Law                       WOODFILL LAW FIRM, P.C.
939 Old Chester Rd.                   3 Riverway Suite 750
Far Hills, New Jersey 07931           Houston, Texas 77056
908-719-8608                          713-751-3080
908-934-9207 (fax)                    713-751-3058 (fax)

Trial Counsel for Plaintiff-Appellant:

Jared R. Woodfill
WOODFILL LAW FIRM, P.C.
3 Riverway, Suite 750
Houston, Texas 77056
Tel: (713) 751-3080
Fax: (713) 751-3058

Defendant-Appellee: Texas Children's Hospital, Incorporated

Trial Counsel for Defendant-Appellee:

Nehal S. Anand
Andrew Barber
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900

ii

Houston, TX 77010
Tel: 713.951.9400
Fax: 713.951.9212

Appellate Counsel for Defendant-Appellee:

Nehal S. Anand
Andrew Barber
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
Tel: 713.951.9400
Fax: 713.951.9212

Dated: August 25, 2025                    /s/ Andrew L. Schlafly
                                          Attorney for Appellant

## STATEMENT IN COMPLIANCE WITH FRAP 40(b)(2)

Religious discrimination by an employer for merely a brief duration is still a violation of Title VII, and by holding otherwise the panel majority conflicts with Supreme Court and Fifth Circuit precedents for this landmark law. *See, e.g.*, *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024) (A Title VII plaintiff need not show "that the harm incurred was 'significant' … [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar."). When an employer does not relent in its discrimination until after the suspended employee hired an attorney, filed a lawsuit, and moved for injunctive relief, the employee retains a viable cause of action. En banc review is warranted, in correction of the published panel decision, to clarify that there is no *de minimis* exception to religious discrimination whereby an employer can avoid its legal obligations (and then even obtain a substantial award of taxed costs against the employee-victim) for the employer's violation that continued after being sued for it. En banc review is needed to confirm that religious discrimination in violation of Title VII, even for a short duration, is fully actionable in court.

As the dissent suggested, if this were discrimination based on race or sex then the Plaintiff would have prevailed. Religious discrimination is just as repugnant, and there is exceptional importance to correcting the panel majority's error that treated temporary religious discrimination as merely a minor infraction.

iv

# TABLE OF CONTENTS

Page(s)

Certificate of Interested Parties.................................................................. ii

Statement in Compliance with FRAP 40(b)(2) .......................................iv

Table of Contents ...........................................................................................v

Table of Authorities ....................................................................................vi

Statement of the Issues................................................................................1

Course of Proceedings and Disposition of the Case .................................1

Statement of Facts .......................................................................................5

Argument and Authorities...........................................................................8

   I.  The Decision by the Panel Majority Conflicts with Multiple Supreme
   Court and Fifth Circuit Precedents .......................................................8

   II. Doubt by a Defendant Employer of the Religious Sincerity of an
   Employee, Whom the Employer Admits Has "Always Had Strong
   Religious Beliefs," Is Inadequate to Justify Granting Summary
   Judgment in the Employer's Favor.....................................................10

   III. The Forfeiture Issue Is a Red Herring Irrelevant to the Panel Majority's
   Decision and This Case.......................................................................11

Conclusion ..................................................................................................13

Certificate of Compliance ........................................................................14

Appendix: the Panel Decision (dated Aug. 11, 2025)

# TABLE OF AUTHORITIES

**Cases**                                                                Page(s)

*Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*,
   813 F.2d 744 (5th Cir. 1987) ........................................................ 12-13

*Elrod v. Burns*, 427 U.S. 347 (1976) ..............................................8

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016)...............................9

*Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781 (5th Cir. 2012)......11

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ........................... iv, 10

*Palms v. Tex. Child.'s Hosp., Inc.*, No. 24-20174,
   2025 U.S. App. LEXIS 20319 (5th Cir. Aug. 11, 2025) ................. 3, 4, 5, 11, 12

*Passarella v. Aspirus, Inc.*, 108 F.4th 1005 (7th Cir. 2024)....................9

*Rakhshandeh v. Tex. Tech. Univ.*, No. 23-10201,
   2023 U.S. App. LEXIS 23006 (5th Cir. Aug. 30, 2023) ....................12

*Rollins v. Home Depot USA*, 8 F.4th 393 (5th Cir. 2021) ........................ 5, 12, 13

*Roman Cath. Diocese of Brookly v. Cuomo*, 141 S. Ct. 63 (2020) .........................9

*Sambrano v. United Airlines, Inc.*, 45 F.4th 877 (5th Cir. 2022) .............................8

*Sibley v. Touro LCMC Health*, No. 24-30189,
   2024 U.S. App. LEXIS 31829 (5th Cir. Dec. 16, 2024)....................5

*Smith v. Kendall*, No. 23-50713, 2024 U.S. App. LEXIS 25440
   (5th Cir. Oct. 8, 2024)...............................................10

*Wright v. Honeywell Int'l, Inc.*, No. 24-30667,
   2025 U.S. App. LEXIS 19697 (5th Cir. Aug. 5, 2025) .......................5

**Statutes and Rules**

Title VII, 42 U.S.C. § 2000e, *et seq.*.................................... iv, 8, 9, 10, 12

   § 2000e–2(a)(1)................................................. 4

   § 2000e(j) .................................................... 4

Fed. R. App. P. 40(b)(2) ................................................ iv

5th Cir. R. 47.5.2.................................................... 3

## STATEMENT OF THE ISSUES

The following two issues are presented here:

1. Whether, contrary to Supreme Court and Fifth Circuit precedents, there is a *de minimis* exception to religious discrimination, exempting wrongful conduct that continued after the victim hired an attorney, filed a federal lawsuit, and moved in court for injunctive relief. *See* Plaintiff's appellate opening brief, Doc. 32-1 at 12-13.

2. Whether, contrary to Fifth Circuit precedent, summary judgment against a religious discrimination claim is properly based on a defendant's doubt that a plaintiff's assertion of a religious belief was sincere. *See* Plaintiff's appellate opening brief, Doc. 32-1 at 7-12 (beginning with Palms' argument that "there is a fact question regarding the sincerity of Ms. Palm's religious beliefs and damages related to her being suspended without pay and legal fees associated with the prosecution of her case").

## COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

Plaintiff Tisha Palms ("Palms") sued Defendant Texas Children's Hospital, Incorporated ("TCH") for religious discrimination on November 16, 2022. [ROA.5-15]. The following day, Palms filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking, *inter alia*, that TCH be temporarily enjoined from terminating her for failing to receive the annual flu vaccine.

[ROA.16-39]. On November 22, 2022, before Palms' Motion for Restraining Order and Preliminary Injunction could be heard and ruled upon by the district court, TCH reversed its position, terminated its ongoing suspension of Palms without pay, allowed her to return to work, and granted her request for a religious exemption from the its flu vaccine mandate. [ROA.320-323] Palms was thereby allowed to return to work only after she hired an attorney who filed the Complaint, and only after Palms' attorney had filed her Motion for Restraining Order and Preliminary Injunction. [ROA.5-15] [ROA.16-39] TCH's actions caused Palms to incur lost wages and legal fees. [ROA.10]

On February 2, 2024, Appellee filed its Motion for Summary Judgment. [ROA.98-505] Appellant responded on February 23, 2024. [ROA.507-715] On March 19, 2024, the trial court granted summary judgment to TCH based on two grounds: (1) the court gave credence to doubt about the sincerity of Palms' religious belief against vaccination, which is a disputed issue of material fact [ROA.865-66] and (2) "THC [*sic*] has reasonably accommodated her" despite how TCH denied any accommodation until after Palms sued and moved for injunctive relief. [ROA.866] TCH then moved for and obtained the taxation in its favor of costs against the victim Palms, totaling $8,466.37. [ROA.869-90] Palms timely appealed. [ROA.891]

In Palms' opening appellate brief here, she argued at length that the issue of the sincerity of her religious belief created an issue of material fact precluding summary judgment below. *See, e.g.*, Doc. 32-1, at 9 (subheading B: "The sincerity of Ms. Palms' religious beliefs is a fact question."). She further argued that "[t]he trial court fails to appreciate that TCH reconsidered it actions only after Ms. Palms hired a lawyer, filed her Complaint, and filed a Motion for Temporary Restraining Order and Preliminary Injunction, requesting that TCH be temporarily enjoined from terminating her for failing to receive the flu shot." Doc. 32-1, at 9.

The appellate panel majority affirmed the summary judgment in a four-paragraph *per curiam* opinion, which is published as requested by a judge pursuant to 5th Cir. R. 47.5.2. *Palms v. Tex. Child.'s Hosp., Inc.*, No. 24-20174, 2025 U.S. App. LEXIS 20319 (5th Cir. Aug. 11, 2025).[1] Without focusing on the district court's failure to recognize the triable issue of material fact as to the sincerity of Palms' religious brief, the panel majority instead held that the ultimate granting of a religious accommodation by TCH was sufficient and that Palms had forfeited on appeal her claim for injury due to TCH's initial denial of a religious accommodation. *Palms*, 2025 U.S. App. LEXIS 20319, at *2 (holding that "in her

---

[1] The panel majority repeatedly refers to a "Harmon" but the Plaintiff's name is Tisha Palms. *Palms*, 2025 U.S. App. LEXIS 20319, at *3 ("While we deeply respect religious beliefs, including Harmon's …." and "we are not addressing the merits of Harmon's claims.").

one-paragraph discussion of the issue, she never … explains why the district court could not dismiss her claim on this ground"). This appears to be a reference to Palms' argument on pp. 12-13 of her opening brief, under the heading "TCH only accommodated Ms. Palms after she filed suit and had suspended her without pay for failing to comply with its Flu Shot Mandate." (Doc. 32-1) There Palms expressly identified multiple claims that remain live after the delayed religious accommodation provided by TCH, including that:

> * "Ms. Palms was suspended without pay"
> * "Ms. Palms mental anguish claim"
> * she is "seeking compensation for violations of her right under 42 U.S.C. §§ 2000e–2(a)(1), 2000e(j)"
> * she seeks "award … of damages, including back pay … punitive damages, and compensatory damages," and
> * seeks an "[a]ward…[of] reasonable attorney's fees and costs"

(Doc. 32-1, p. 13, quoting the complaint and citing to the ROA, additional internal quotations and bracketing omitted).

In dissent, Judge Engelhardt correctly pointed out that:

> the hospital did not provide a full accommodation to Palms in less than one week. The hospital was obligated to accommodate Palms when she submitted her request for a religious exemption. It shirked that responsibility and failed to accommodate Palms for approximately two months. Then, the hospital provided an accommodation only *after* Palms had been placed on unpaid leave, and *after* she initiated a lawsuit against it. Palms is entitled to seek relief for the religious discrimination that occurred.

*Palms*, 2025 U.S. App. LEXIS 20319, at *7-8 (Engelhardt, J., dissenting, emphasis in original).

The dissent explained further that:

Palms' brief is adequate [as] recognized by the hospital, which did not argue or even mention forfeiture of arguments under *Rollins*; to the contrary, the hospital responded with a 25-page comprehensive engagement of Palms' brief, joining issue accordingly with full understanding of Palms' arguments.

*Palms*, 2025 U.S. App. LEXIS 20319, at *12 (citing *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021)).

The dissent then found that Palms' claim for religious discrimination should have survived summary judgment, concluding that:

This explanation, like that in *Wright* and *Sibley*, is enough to put the hospital on notice that Palms' religious beliefs conflict with her taking the flu vaccine. *Wright*, 2025 U.S. App. LEXIS 19697, 2025 WL 2218131, at *1; *Sibley*, 2024 U.S. App. LEXIS 31829, 2025 WL 5118489, at *2. We should decide like cases alike.

*Palms*, 2025 U.S. App. LEXIS 20319, at *17-18 (Engelhardt, J., dissenting).

## STATEMENT OF FACTS

Plaintiff Palms began working for Defendant TCH more than 20 years ago, and in September 2021 TCH required employees to take the COVID-19 shot or obtain an exemption. [ROA.256-288] [ROA.296-310] On September 20, 2021, Palms submitted her request for a religious exemption from TCH's COVID-19 shot mandate. [ROA.153:24-154:2] [ROA.155:8-19] She wrote in her request:

I am respectfully requesting an exemption from taking the covid19 vaccination. I contracted covid19 and was out on leave in early May 2021. And with God's grace and protection I completely recovered from it at the end of May 2021. Therefore, I should already have antibodies in my system to help fight any further infections. Also, as the Bible states in many

scriptures, my body is God's temple and as such I should not inject this vaccine into my body. God has already provided all of His children with an immune system that is built for that specific reason and because I am a child of God and have faith that He WILL continue to protect me. As a result of all this stress over the forcing of this very very new vaccine I started experiencing chest pains, hypertension, and irregular heart palpitations in August 2021. I had already been diagnosed with a heart murmur in the past so I sought medical attention. The doctor took me off work for 3 weeks and I was on FMLA just returning to work on September 16, 2021. Therefore, I have a conscious belief and the decision has been made by my family and I that I should not take the vaccine based on the recent discoveries that the vaccine can cause myocarditis and pericarditis in some people. I will however follow TCH's guidelines such as wearing PPE. I have been employed by TCH for over 21 years and have always followed the policies of my employer. I have been a dependable and committed employee and hope to continue working for TCH. It is my sincere hope that you will grant my exemption and allow me to further serve my community through my employment. Thank you for your consideration in this matter. I am awaiting your decision.

[ROA. 214-215] [ROA.133-204] [ROA.162:14-163:6] Two days later TCH granted Palms' request for a religious exemption from the Covid-19 vaccine. [ROA.217-218]

The following year, on September 20, 2022, TCH instituted its Required Influenza Vaccination Policy ("Flu Shot Mandate"), requiring all employees to receive the flu vaccine or obtain approval for an exemption. [ROA.293-294] Non-compliance by November 17, 2022, resulted in placing the employee on a two-week, unpaid administrative leave. [ROA.252-255] If the employee was still non-compliant by December 2, 2022, then TCH indicated it would fire her. [ROA.252-255]

On September 23, 2022, Plaintiff Palms submitted a request for a religious

exemption from TCH's Flu Shot Mandate, stating:

> I am respectfully requesting an exemption from taking the flu vaccination. The Bible states in many scriptures, my body is God's temple and as such I should not inject vaccines into my body. God has already provided all of His children with an immune system that is built for that specific reason and because I am a child of God and have faith that He WILL continue to protect me. As a result of all this stress over the forcing of vaccines I started experiencing chest pains, hypertension, and irregular heart palpitations in August 2021. I had already been diagnosed with a heart murmur in the past so I sought medical attention. The doctor took me off work for 3 weeks and I was on FMLA because of all the stress over forcing individuals to get vaccines. Therefore, I have a conscious belief and the decision has been made by my family and I that I should not take vaccines because my strong belief in God and the fact that He and He alone protects me. I will however follow TCH's guidelines such as wearing PPE. I have been employed by TCH for over 22 years and have always followed the policies of my employer. I have been a dependable and committed employee and hope to continue working for TCH. It is my sincere hope that you will grant my exemption and allow me to further serve my community through my employment. Thank you for your consideration in this matter. I am awaiting your decision.

[ROA.234-235]

On October 7, 2022, TCH informed Ms. Palms that her request for a religious exemption was denied. [ROA.13] On November 9, 2022, Ms. Palms was notified that she would be suspended without pay for failing to take the flu shot. [ROA.13] TCH further informed Ms. Palms that she would be fired on December 2, 2022 if she did not submit proof that she had taken the flu shot. [ROA.13]

In prior years until 2020, Palms had taken the annual flu shot but her religious views then became what she described to TCH in her request for a

religious exemption. [ROA.12-14] TCH initially denied Palms' request for a religious exemption from the flu vaccine mandate. [ROA.13]

The day before TCH's suspension of Palms under the vaccine mandate, she filed this lawsuit based on TCH's violation of Title VII by not accommodating Palms' religious belief. [ROA.4, citing 42 U.S.C. § 2000e, *et seq*.] Palms attached to her complaint an affidavit explaining how her religious beliefs had developed to prevent her from receiving the flu vaccine that year when it had not previously. [ROA.12-14] Two days after the suspension of Palms went into effect, TCH belatedly granted her the religious accommodation as she had previously requested. [ROA.862]

## ARGUMENT AND AUTHORITIES

### I.  The Decision by the Panel Majority Conflicts with Multiple Supreme Court and Fifth Circuit Precedents.

By creating a *de minimis* exception to religious liberty, the panel majority ruled contrary to Supreme Court and Fifth Circuit precedents in Title VII cases, and also contrary to the well-established principle of constitutional law that "violations of the First Amendment have long been deemed irreparable. As the Supreme Court has held for decades, '[t]he loss of First Amendment freedoms, ***for even minimal periods of time***, unquestionably constitutes irreparable injury.' *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)." *Sambrano v. United Airlines, Inc.*, 45 F.4th 877, 879 (5th Cir. 2022) (Ho, J., concurring, emphasis added). *See*

8

*also Google, Inc. v. Hood*, 822 F.3d 212, 227 (5th Cir. 2016) (same); *Roman Cath.*

*Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (*per curiam*) (same).

While Title VII is not the Constitution itself, the Supreme Court's reasoning is

closely analogous:

> To be sure, the Court's decisions have not interpreted Title VII but, by
> close analogy, have considered what constitutes religious practice,
> observance, and belief under the Free Exercise Clause of the First
> Amendment and different federal statutes, including the Religious Freedom
> Restoration Act (RFRA) and the Religious Land Use and Institutionalized
> Persons Act (RLUIPA). At every turn the Court's watchword has been
> caution.

*Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010 (7th Cir. 2024) (reversing a

dismissal of Title VII claims based on a hospital-employer's failure to grant a

religious exemption from a Covid vaccination requirement).

 The courthouse doors should be open equally to both the slightly injured and

the severely harmed. Those who have a valid cause of action for religious

discrimination under Title VII do not lose their rights if an employer changes

course while the lawsuit is pending, as happened below. Rehearing en banc is

essential before the panel majority's published decision excusing a temporary

infringement on religious liberty becomes the new standard, in contrast with

discrimination based on race, sex, or other traits protected by Title VII.

 The injustice of the outcome below is illustrated by how TCH, as the

prevailing party in district court despite how its wrongdoing necessitated this

lawsuit, then submitted a substantial demand for and obtained taxation in its favor of costs against the victim Palms, totaling $8,466.37. This result is the direct opposite of what Title VII provides in awarding attorneys' fees to the victims of religious discrimination, rather than rewarding the perpetrators of it. Palms was the victim of religious discrimination, and yet under the panel majority decision Palms is both denied recovery of her attorneys' fees for properly bringing this lawsuit, and instead is ordered to pay TCH's substantial taxable costs. This is inappropriate under Title VII.

Multiple Supreme Court and Fifth Circuit decisions stand against the panel majority's decision in favor of TCH despite its undeniable, or at least triable, religious discrimination for a limited period of time, as explained by Judge Engelhardt's dissent from the panel decision. *See also Smith v. Kendall*, No. 23-50713, 2024 U.S. App. LEXIS 25440, at *12 (5th Cir. Oct. 8, 2024) (quoting the Supreme Court for the principle that "[a]lthough an employee must show some harm ... to prevail in a Title VII suit, she need not show that the injury satisfies a significance test") (quoting *Muldrow*, 601 U.S. at 350). In light of these precedents and the foregoing reasons, rehearing en banc is essential here.

## II.    Doubt by a Defendant Employer of the Religious Sincerity of an Employee, Whom the Employer Admits Has "Always Had Strong Religious Beliefs," Is Inadequate to Justify Granting Summary Judgment in the Employer's Favor.

As Judge Engelhardt's dissent explained:

10

There can be no question as to the sincerity of Palms' religious beliefs. Her employer, the hospital, does not dispute that Palms held a bona fide religious belief, admitting that "Palms always had strong religious beliefs." The hospital also previously granted Palms a religious exemption to the COVID-19 vaccine based on the same religious beliefs only a year before denying her religious exemption to the flu vaccine. That fact fully establishes the hospital's appreciation of Palms' bona fide religious belief. It is also undisputed that the hospital received Palms' request for a religious exemption to the flu vaccine and that Palms was placed on unpaid leave because she refused to receive the vaccine.

The hospital reasoned that because Palms received the vaccine in the past, there was no good reason she could refuse to receive it again. Unless, of course, she explained her religious beliefs to the employer's satisfaction. That is itself religious discrimination.

*Palms*, 2025 U.S. App. LEXIS 20319, at *13 (Engelhardt, J., dissenting).

Amid this disputed issue of material fact about the legitimacy of Palms' assertion of her religious belief against vaccination, there was no justification for the district court to grant summary judgment in favor of TCH. "Sincerity is generally presumed or easily established." *Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 791 (5th Cir. 2012). At a minimum, this creates a triable issue of material fact under Fifth Circuit precedent, which should not have been disposed of below by granting summary judgment to TCH.

## III.  The Forfeiture Issue Is a Red Herring Irrelevant to the Panel Majority's Decision and This Case.

The panel majority based its decision in part on forfeiture, which has no application here. As the dissent pointed out, the forfeiture argument by the panel

majority appears to be a substitute for mootness, which likewise does not exist here with multiple remedies, such as one for attorneys' fees, which should remain available to Palms as set forth in the Course of Proceedings and Disposition of the Case section above.

In the Fifth Circuit, forfeiture does not even apply when "the question is one of pure law and not answering it would be unjust." *Rakhshandeh v. Tex. Tech. Univ.*, No. 23-10201, 2023 U.S. App. LEXIS 23006, at *4 n.1 (5th Cir. Aug. 30, 2023) (citing *Rollins*, 8 F.4th at 398). Here, the Title VII issue is of pure law and denying any remedy for religious discrimination is patently unjust. It is only by erroneously downplaying the importance of religious discrimination compared to other forms of invidious discrimination that a court could find that it would be just to dismiss this case. Dismissal of a legitimate claim for religious discrimination would be as unjust as dismissing bona fide claims for other types of discrimination. Thus forfeiture doctrine cannot sustain the panel majority and, as explained by the dissent, plaintiff did not forfeit her arguments on appeal anyway. *Palms*, No. 2025 U.S. App. LEXIS 20319, at *12 (Engelhardt, J., dissenting) ("Palms' brief more than adequately explains how she believes the district court erred, and the principles upon which her arguments are based. That is hardly forfeiture.").

The panel majority misplaced reliance on *Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, which found that "[i]n practical effect, Brinkmann's one-page

12

recitation of familiar rules governing our review of summary judgments, without even the slightest identification of any error in Judge Fish's legal analysis or its application to Brinkmann's suit against O'Hara, is the same as if he had not appealed that judgment." 813 F.2d 744, 748 (5th Cir. 1987). In contrast, Palms made succinct, persuasive arguments on appeal about the defects in the summary judgment below, including how TCH's ultimate rescission of its religious discrimination does not eliminate Palms' claims for the discrimination that did occur. Likewise, *Rollins* is inapplicable because it concerned "the familiar question whether a court should consider arguments raised for the first time on appeal." *Rollins*, 8 F.4th at 397. Palms did assert her arguments both in the district court [ROA.526-27] and in her opening brief here on appeal (Doc. 32-1).

## CONCLUSION

Religious discrimination is to be taken as seriously as other forms of discrimination, and rehearing en banc is warranted to clarify that deprivations of religious liberty for even short periods of time are actionable.

Dated: August 25, 2025                    Respectfully Submitted,

                                          s/ Andrew L. Schlafly

                                          Andrew L. Schlafly
                                          Attorney at Law
                                          939 Old Chester Rd.
                                          Far Hills, NJ 07931
                                          aschlafly@aol.com
                                          Voice:  908-719-8608

Fax:    908-934-9207
Email: aschlafly@aol.com

Jared R. Woodfill
Woodfill Law Firm, P.C.
3 Riverway Suite 750
Houston, Texas 77056
Tel: 713-751-3080
Fax: 713-751-3058
Email: jwoodfill@woodfilllaw.com

*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE

Andrew L. Schlafly, counsel for Appellant, hereby certifies that:

1. This petition complies with the volume limitation contained in Rule 40(d)(3)(A) of the Federal Rules of Appellate Procedure because this petition contains 3,590 words, including the item required by 5th Cir. R. 40.2.5 while excluding the items identified in Rule 32(f).

2. This petition complies with the typeface requirements in Fed. R. App. P. 32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6) because the petition has been prepared in a proportionally spaced typeface and, except for emphases, in a plain, roman style using Times New Roman in 14 point.

Dated: August 25, 2025

s/ Andrew L. Schlafly
Attorney for Appellant

# APPENDIX

# United States Court of Appeals for the Fifth Circuit

—————————

No. 24-20174

—————————

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2025

Lyle W. Cayce
Clerk

Tisha Palms,

*Plaintiff—Appellant,*

*versus*

Texas Children's Hospital, Incorporated,

*Defendant—Appellee.*

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-3992

———————————————————

Before Dennis, Haynes, and Engelhardt, *Circuit Judges.*

Per Curiam:[*]

Tisha Palms has worked as a radiographer and radiology specialist at Texas Children's Hospital (TCH) for over twenty-two years. On September 20, 2022, TCH implemented a flu shot mandate for its employees. Palms requested an accommodation from this mandate on religious grounds, which

---

[*] At the request of our dissenting colleague, this opinion is designated for publication. *See* 5th Cir. R. 47.5.2 ("An opinion will be published unless each member of the panel deciding the case determines that its publication is neither required nor justified under the criteria for publication."). The panel majority would decline to publish.

No. 24-20174

TCH initially denied because Palms allegedly failed to adequately explain how her beliefs conflicted with the vaccine mandate. The day before TCH planned to suspend Palms under the vaccine mandate, she filed this suit, bringing a Title VII claim for failure to accommodate, amounting to religious discrimination. Palms attached to her complaint an affidavit explaining how her religious beliefs had evolved to prevent her from receiving the flu vaccine that year when it had not previously. Accordingly, two days after the suspension went into effect, TCH granted her an accommodation, which she accepted. Palms continued the suit without amendment.

The district court granted summary judgment on Palms' Title VII failure-to-accommodate claim because it is undisputed that THC granted Palms a religious accommodation, which she accepted. On appeal,[1] Palms appears to challenge that ruling. But she does not address the district court's analysis or explain how it erred. *See Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (finding that appellant forfeited an argument by failing to address the district court's analysis and explain how it erred). Indeed, in her one-paragraph discussion of the issue, she never states that TCH's offered accommodation was unreasonable or explains why the district court could not dismiss her claim on this ground. More glaringly, Palms offers no citations to caselaw or relevant legal authority to support her "argument," whatever it may be. *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (holding that a party forfeits an argument when it fails to "offer any supporting argument or citation to authority" or to "identify relevant legal standards and any relevant Fifth Circuit cases") (quotation omitted). Because Palms failed to adequately brief any argument regarding the district court's finding that THC's offer of a

---

[1] Our review is de novo. *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004) (citation omitted).

reasonable accommodation merited summary judgment, she has forfeited it. *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

The dissenting opinion (including its citation to cases) addresses a majority opinion of its own invention—one that bears no resemblance to the opinion we issue today. This court regularly relies on *Rollins v. Home Depot* when a party's briefing is woefully inadequate. And no exception to *Rollins* arises merely because "our task is the de novo review of the summary judgment record." *Post*, at 10. We see no reason to depart from settled practice in this case. While we deeply respect religious beliefs, including Harmon's, "[w]e should decide like cases alike" and apply *Rollins* as we would in any other case. *Id.* at 14.[2]

The district court's judgment is AFFIRMED.

---

[2] Thus, we are not addressing the merits of Harmon's claims since she failed to file an adequate brief.

No. 24-20174

Kurt D. Engelhardt, *Circuit Judge*, dissenting.

Religious discrimination is religious discrimination, even if it stops. But the majority holds that when an employer eventually and undisputably stopped discriminating, after it was sued, the employee forfeits arguments on appeal related to all past discrimination. Not so. Moreover, that legal trick-box deprives an employee of the ability to pursue her meritorious claim of religious discrimination.

Because I do not think Appellant forfeited her claim, and because the claim that her employer unduly questioned the sincerity of her religious beliefs has merit, I dissent.

## I.

Since 2000, Tisha Palms was employed by Texas Children's Hospital ("hospital"). In September 2022, the hospital implemented a Required Influenza Vaccination Policy ("Policy"), its flu shot mandate, for its employees. To comply with the Policy, hospital employees needed to either (1) receive and present proof of receipt of the flu vaccine, (2) have an approved religious exemption to the vaccine, or (3) have an approved medical exemption to the vaccine. Employees had approximately two months from the release of the new Policy to comply. Employees who failed to obtain compliance by that time would be placed on unpaid leave and subsequently terminated.

Palms voluntarily elected to receive the flu vaccine for 20 years. She chose not to receive the vaccine in 2021. When the Policy was released in 2022, she sought a religious exemption from the vaccine. The hospital's form to request a religious exemption asked employees to: (1) describe in their "own words" their "deeply held religious beliefs, practices, or observances that prevent [them] from receiving the influenza vaccine" without "copy[ing] and past[ing] from the internet;" and (2) if they had received the

flu vaccine in the past, "describe how and why [their] beliefs, practices, or observances may have changed." Palms described her religious beliefs but did not comply with the latter request: explain why she had received the flu vaccine in the past yet now claimed an exemption and no longer wanted to receive it.

While the hospital acknowledged Palms' strong religious beliefs, it determined that because Palms had not articulated how her beliefs *changed* from when she previously received the vaccine to her current request for exemption, it could not determine whether she had sincere religious beliefs that conflicted with receipt of the flu vaccine. It denied her request for a religious exemption and placed her on unpaid leave as a prelude to termination. This, despite recognizing and granting Palms an exemption to the COVID-19 vaccine for her religious beliefs only a year earlier. That the hospital recently granted Palms a religious exemption to the COVID-19 vaccine based on the same religious beliefs in 2021 establishes that the hospital well-knew the sincerity of Palms' religious beliefs.

Palms sued the hospital. The next day, the hospital suspended Palms without pay for failure to receive the flu vaccine.

Attached to Palms' complaint in the lawsuit was an affidavit that included an explanation for why the vaccine was against Palms' religious beliefs, despite taking the vaccine in the past. Though it had previously recognized and granted Palms' religious exemption to the COVID-19 vaccine, the hospital then determined that the affidavit cured the prior deficiency in Palms' religious exemption request. It informed Palms that it was granting her religious exemption and that she could return to work so long as she wore a surgical mask for the remainder of that flu season and

future flu seasons.[1] Palms complied with wearing a mask and was permitted to return to work after four days of unpaid administrative leave.[2] Palms is still employed by the hospital as a radiology specialist today.

The hospital moved for summary judgment. The district court entered a memorandum opinion and order granting the hospital's summary judgment motion in full and entered a final judgment. It held that Palms failed to establish a *prima facie* case for her Title VII failure to accommodate claim. Further, the district court held that even if Palms established a *prima facie* case, the claim failed because the hospital promptly accommodated Palms' request once she explained how her beliefs had changed.

## II.

I note, first, the portions of the holding with which I agree. It is undisputed that in November 2022, Palms returned to work and that the accommodation provided was that she needed to wear a mask during flu season rather than receive the flu vaccine. And it is undisputed that it was not an undue hardship on the hospital to provide that accommodation.[3] Palms accepted the accommodation and remains employed by the hospital today. Even so, it is also undisputed that, for a time, Palms was placed on unpaid

---

[1] The majority suggests that Palms should have amended her complaint once she was reinstated by the hospital. Maj. Op. at 2. It is unclear what amendment the majority expected Palms to make. No element of her claim changed after she was reinstated. Palms is still pursuing the same Title VII claim against her employer for the religious discrimination that occurred before her reinstatement. This claim is clearly and adequately raised in Palms' original complaint.

[2] Palms was placed on administrative leave for four days. Two of those days were Saturday and Sunday. It is unclear from the record whether Palms, as a hospital employee, attended work on weekends.

[3] "An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

No. 24-20174

leave because she refused the flu vaccine for previously recognized religious reasons.

Where I depart from the majority is, in my view, the hospital did not provide a full accommodation to Palms in less than one week. The hospital was obligated to accommodate Palms when she submitted her request for a religious exemption. It shirked that responsibility and failed to accommodate Palms for approximately two months. Then, the hospital provided an accommodation only *after* Palms had been placed on unpaid leave, and *after* she initiated a lawsuit against it. Palms is entitled to seek relief for the religious discrimination that occurred.

Yet the majority opinion wrongly views that the only relevant unit of analysis is whether the *eventual* accommodation was reasonable. So, according to the majority, if an employee fails to make an argument for why that *eventual* accommodation was unreasonable, she forfeits her Title VII claim.[4] But this case is not about the reasonableness of the eventual accommodation. Rather, the proper unit of analysis is the intervening days during which the employer failed to provide an accommodation at all, subjected the employee to a probing religious test, and eventually placed the employee on unpaid leave, all while being well-familiar with her religious beliefs.

---

[4] While the majority rests on forfeiture, its argument seems more akin to mootness because it argues an employee has no Title VII claim when her employer eventually provided a reasonable accommodation. Maj. Op. at 3. *Compare Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 824 (5th Cir. 2025) (quotation marks omitted) ("When a complaining party manages to secure outside of litigation *all* the relief he might have won in it, the case is moot"), *with United States v. Olano*, 507 U.S. 725, 733 (1993) ("[F]orfeiture is the failure to make the timely assertion of a right . . . ."). Regardless of the doctrine at play, discrimination need not be continuous to constitute an actionable claim.

Palms' claim for discrimination arising from those intervening days is not forfeited. In her opening brief, Palms argues the timing of the hospital's accommodation was unreasonable because it caused her to be impermissibly "suspended without pay" due to her religious beliefs. She explains, "[t]he trial court fails to appreciate that [the hospital] reconsidered it actions only after Ms. Palms hired a lawyer, filed her Complaint, and filed a Motion for Temporary Restraining Order and Preliminary Injunction, requesting that [the hospital] be temporarily enjoined from terminating her for failing to receive the flu shot." And Palms cites the statute being violated, stating that "she is seeking compensation for violations of her right under 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j)." That statute makes it "unlawful" for an employer "to discharge any individual . . . with respect to his . . . religion." 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j). Palms seeks an "[a]ward . . . [of] damages, including back pay . . . punitive damages, and compensatory damages" as well as an "[a]ward . . . [of] reasonable attorney's fees and costs."

As a backstop, the majority discards Palms' claim as *de minimis*, i.e., "two days after the suspension went into effect, TCH granted her an accommodation, which she accepted." Maj. Op. at 2. That is wrong, too. The duration of discrimination Palms faced goes to the amount of damages to which Palms may be potentially entitled, not whether she stated a claim.[5] We

---

[5] *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975) (holding that the purpose of Title VII is to fashion "the most complete relief possible" and that "given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination"); *see also Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 631 (5th Cir. 1983) (holding that the district court abused its discretion in failing to award back pay to plaintiffs, because the "purposes of Title VII command back pay relief in all but 'special' circumstances"); *Claiborne v. Ill. Cent. R. R.*, 583 F.2d 143, 149 (5th Cir. 1978) ("The aim of Title VII relief, whether back-pay, retroactive seniority, or other

should not disallow a religious discrimination claim because the discrimination stopped when the employer was sued. *See* 42 U.S.C. § 2000e–5(g) (emphasis added) ("If the court finds that the respondent *has* intentionally engaged in *or is* intentionally engaging in an unlawful employment practice" the court may "order such affirmative action as may be appropriate, which may include, but is not limited to . . . back pay."). While the majority might be comfortable endorsing this in the cause of vaccination—and when the discrimination at issue is religion-based—I wonder whether anyone would endorse this concept in any other context involving discrimination, say by race, sex, or disability. Discrimination is discrimination, regardless of duration. *See Figgs v. Quick Fill Corp.*, 766 F.2d 901, 902 (5th Cir. 1985) (affirming the district court's award for back pay from the date of plaintiff's dismissal to the date of her reinstatement in the context of a plaintiff who brought a Title VII race discrimination claim); *see also Clanton v. Orleans Par. Sch. Bd.*, 649 F.2d 1084, 1092 (5th Cir. 1981) (affirming the district court's grant of "backpay from the date upon which [plaintiffs] were willing and fit to work until the date of their reinstatement" in the context of plaintiffs who brought a Title VII sex discrimination claim).

Indeed, the U.S. Supreme Court just last year held that "[d]iscriminate against" in Title VII entails no "threshold of harm" to state a claim. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). "There is nothing in the provision to distinguish . . . between [employer actions] causing significant disadvantages and [employer actions] causing not-so-significant ones." *Id.* "'Discriminate against' means treat worse," here based on religion. *Id.* Because of Palms' religion, she was subject to a religious test by her employer's human resources department and was

---

injunctive relief, is thus to make whole the victims of discrimination according to what would have been their experience in a non-discriminatory work setting.").

ultimately denied an accommodation for approximately two months, resulting in multiple days of unpaid leave in addition to the stated threat of termination. For weeks, Palms worked under the stress of knowing she might lose her job because of her religious beliefs. According to the Supreme Court, that treatment is enough to make out a Title VII discrimination claim.

Palms clearly argues in her opening brief that the hospital's decision against providing an accommodation which resulted in multiple days' unpaid leave was a failure to provide a reasonable accommodation for her religion. I do not share the majority's willing blindness to this when it states that "she does not address the district court's analysis or explain how it erred." Maj. Op. at 2. That Palms' brief is adequate is recognized by the hospital, which did not argue or even mention forfeiture of arguments under *Rollins*; to the contrary, the hospital responded with a 25-page comprehensive engagement of Palms' brief, joining issue accordingly with full understanding of Palms' arguments. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).[6] Further, our task is the de novo review of the summary judgment record as compiled in the district court, so those pleadings too inform our understanding of the case. *See Tango Transp. v. Healthcare Fin. Servs.*, 322 F.3d 888, 890 (5th Cir. 2003). In my opinion, Palms' brief more than adequately explains how she believes the district court erred, and the principles upon which her arguments are based. That is hardly forfeiture.

---

[6] The hospital's brief argues that Palms waived her Title VII retaliation claim and her Title VII disparate treatment claim. It explains: "Palms wholly failed to address either of these claims in her brief. She has therefore abandoned these claims on appeal." Yet, despite the majority's view, the hospital never asserts that Palms' Title VII failure to accommodate claim was abandoned on appeal, either by way of inadequate briefing or failure to brief.

### III.

Turning to the dispute over whether Palms asserted a Title VII failure to accommodate claim: To establish a *prima facie* case of religious discrimination, a plaintiff asserting a failure to accommodate claim under Title VII need *only* satisfy the following elements: "(1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014) (internal citation omitted). At this summary judgment stage, all those elements were met.

There can be no question as to the sincerity of Palms' religious beliefs. Her employer, the hospital, does not dispute that Palms held a bona fide religious belief, admitting that "Palms always had strong religious beliefs." The hospital also previously granted Palms a religious exemption to the COVID-19 vaccine based on the same religious beliefs only a year before denying her religious exemption to the flu vaccine. That fact fully establishes the hospital's appreciation of Palms' bona fide religious belief. It is also undisputed that the hospital received Palms' request for a religious exemption to the flu vaccine and that Palms was placed on unpaid leave because she refused to receive the vaccine.

The hospital reasoned that because Palms received the vaccine in the past, there was no good reason she could refuse to receive it again. Unless, of course, she explained her religious beliefs to the employer's satisfaction. That is itself religious discrimination.

It is unsurprising that such a proposition—the requirement that Palms articulate how her beliefs *changed* from when she previously received the flu vaccine to her current request for an exemption—is unsupported by the

caselaw of this court and that of the U.S. Supreme Court. Neither has ever required an employee to adequately explain a *change* in behavior when proving how her religious views conflict with an employment requirement. In fact, principles of this court's precedents foreclose imposing such a requirement when establishing sincerity of religious belief. We have held, for example, that "[a] showing of sincerity does not necessarily require strict doctrinal adherence to standards created by organized religious hierarchies." *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 791 (5th Cir. 2012), *as corrected* (Feb. 20, 2013). In *Moussazadeh*, a prisoner sought kosher meals arguing that it was part of his duty to only eat kosher meals according to his Jewish faith. *Id.* at 784. The inmate in that case had, on some past occasions, purchased non-kosher food items including cookies, soft drinks, coffee, tuna, and candy. *Id.* at 791. In that context, this court determined that those past actions did not make Moussazadeh's current beliefs insincere. *Id.* There is no reason why that principle should not apply here.

*Moussazadeh* directly forecloses any argument that Palms failed to establish a sincerely held belief because she had been vaccinated against the flu in the past.[7] *Moussazadeh's* reasoning applies equally in the context of an employee notifying an employer of a conflict between a sincerely held religious belief and an employment policy. An employee, when notifying that a sincerely held belief conflicts with an employment practice, need not demonstrate why her past actions conflict with her current religious beliefs, contrary to the very import of Title VII.

_____

[7] "The sincerity of a plaintiff's belief in a particular religious practice is an essential part of the plaintiff's prima facie case under either Title VII or RFRA," and "the related Religious Land Use and Institutionalized Persons Act ('RLUIPA')." *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013), *abrogated on other grounds by Groff v. DeJoy*, 600 U.S. 477 (2023).

Moreover, this court recently held that the following language, included in employees' religious exemption requests to the COVID-19 vaccine, was sufficient to inform employers that their employees' religious beliefs were in conflict with a vaccination requirement. In *Sibley*, an employee explained that she:

> "retain[ed] and reserve[d] all of [her] God-given rights including sole possession and sole use of all [her] biological materials which are granted to [her] by [her] Creator." She further stated that those rights included "the right to decline all attempts to access, influence and or otherwise alter any and all of [her] God given biological material and or biological systems which are unique, flawless and original in design and craftsmanship[.]" Thus, Sibley explained that she "require[d] that any and all products offered to [her] by [her] employer or workplace be both entirely retrievable from and also removable in its entirety from [her] body, person, and womanhood at the conclusion of each and every work period[.]"

*Sibley v. Touro LCMC Health*, No. 24-30189, 2024 WL 5118489, at *2 (5th Cir. Dec. 16, 2024) (brackets and quotation marks in original). Likewise, in *Wright*, an employee wrote in his religious exemption request to the COVID-19 vaccine that, "our creator gave us this gift to choose and decide for ourselves," and also that it is "in our constitution no man should be forced to do something he . . . is not comfortable with." *Wright v. Honeywell Int'l, Inc.*, No. 24-30667, 2025 WL 2218131, at *1 (5th Cir. Aug. 5, 2025). Wright further explained that, while his Christian faith did not "prevent" receipt of the COVID-19 vaccine, "cert[ai]n passages le[ad him] to feel very strongly about" his decision to not receive the vaccine. *Id.* Further, Wright submitted a "third-party attestation of his religious beliefs, completed by his daughter." *Id.* "Citing scripture, his daughter explained, 'It is in our belief that humans should only use things that are created of the earth by God. We believe the vaccine is a claim of the mark of the beast[;] it is man made and

goes against our religion.'" *Id.* This court reversed the district court and held that the employee met his summary judgment burden for his Title VII religious discrimination claim. *Id.* at *4.

Here, Palms provided similar information to the hospital to establish that her religion conflicted with the requirement that she receive the vaccine. Specifically, Palms included the following language in her request for a religious exemption:

> The Bible states in many scriptures, my body is God's temple and as such I should not inject vaccines into my body. God has already provided all of His children with an immune system that is built for that specific reason and because I am a child of God and have faith that He WILL continue to protect me. . . . Therefore, I have a conscious belief and the decision has been made by my family and I that I should not take vaccines because my strong belief in God and the fact that He and He alone protects me.

This explanation, like that in *Wright* and *Sibley*, is enough to put the hospital on notice that Palms' religious beliefs conflict with her taking the flu vaccine. *Wright*, WL 2218131, at *1; *Sibley*, WL 5118489, at *2. We should decide like cases alike.

At the summary judgment stage, Palms has at minimum raised a genuine dispute of material fact for her religious discrimination claim under Title VII.

## IV.

Because I would VACATE the district court's grant of summary judgment, and REMAND to the district court for further proceedings, I respectfully dissent.